(No. 91-CC-1416-)

WILLIAM HORTON, Claimant, *v.* THE STATE OF ILLINOIS and THE ILLINOIS DEPARTMENT OF CORRECTIONS, Respondents.

*Opinion filed May 13, 1994.*

WILLIAM HORTON, *pro se*, for Claimant.

ROLAND W. BURRIS, Attorney General (ELIZABETH M. LOOBY, Assistant Attorney General, of counsel), for Respondents.

OPINION

MITCHELL, J.

This matter comes before the Court on the complaint of William Horton, Claimant, against The State of Illinois, Department of Corrections, seeking an award in damages for personal injury and loss of wages.

Claimant's complaint arose from an incident on June 29, 1993, in which Claimant fell from a ladder while working in his assigned capacity as an asbestos removal worker. Following the incident, Claimant was terminated from his employment as an asbestos removal worker. Claimant seeks damages in the amount of $25,000 for pain and suffering resulting from the alleged personal injury. In addition, Claimant seeks "lay-in pay" in an unstated amount for the period of his injury.

Facts

On June 29, 1990, Claimant was incarcerated at Logan Correctional Center. On that date, Claimant was assigned as an asbestos removal worker which is classified as Worker Apprentice 1 at a pay rate of $1.50 per hour.

Claimant testified that on June 29, 1990 at about 8:20 a.m., pursuant to his supervisor's orders, Claimant was standing on a ladder hanging plastic on the back end of a boiler when the job supervisor told Claimant to come down the ladder. Claimant slipped on some oil on the ladder and fell backwards, striking his back on a steel beam.

Claimant further testified that he had previously warned his supervisor of the presence of oil on the boiler on June 26, 1990, June 27, 1990, and June 28, 1990.

Following the incident, Claimant was examined by a nurse who evaluated the injury as back pain and noted no broken areas of skin. Claimant was referred to Dr. Ulrich.

Dr. Ulrich noted that Claimant had fallen approximately three feet from a ladder. The doctor assessed the injury as a contusion to the back area, ordered an x-ray of the spine and a lay-in for three days. The x-rays showed no evidence of fracture or dislocation. The doctor assessed the condition as a contusion, ordered a muscle relaxant for three days and a low bunk for ten days.

Following his three-day medical lay-in, Claimant was informed that he had been terminated from the asbestos crew. Claimant testified that he had not been involved in any incidents of discipline from the time of his initial assignment on February 22, 1990, to the date of injury on June 29, 1990.

The Respondent introduced the following documents in support of the Claimant's termination from the asbestos unit:

(1) A memorandum dated June 4, 1990, from Lt. Cox, Internal Affairs, evidencing an investigation into Claimant's assertions that people are "out to get him." The memo states that all Claimant's assertions were found to be unsubstantiated. The memo further cites Claimant's inability to accept orders. In conclusion, the memo recommends Claimant's removal from the asbestos unit due to Claimant's inability to accept orders and due to Claimant's irrational behavior.

(2) A memorandum dated June 7, 1990, from Warden Bosse to the asbestos superintendent recommending Claimant's removal from the asbestos unit.

(3) A memorandum dated June 18, 1990, from asbestos supervisor to the asbestos superintendent citing disturbances caused by Claimant and describing Claimant as a slow worker with a poor attitude who questions authority.

(4) A memorandum dated June 20, 1990, from asbestos superintendent Michael Shelton confirming Claimant's removal from the asbestos crew.

Claimant introduced a letter dated January 30, 1991, from Marjorie Donahue, coordinator of inmate issues, which states that Claimant was compensated in full for the month of June, 1990 in the amount of $157.62. In addition, Claimant was compensated $51.67 for lay-in status in July, 1990 and that the full amount was posted to Claimant's trust fund account.

The following evidence of Claimant's back treatment subsequent to the injury on June 29, 1990:

On July 30, 1990, Claimant was seen on the sick call complaining of low back pain after jumping on his bed. Following an examination by a doctor on July 31, 1990,

the doctor noted that Claimant had no restriction of movement and prescribed pain medication for seven days.

On September 15, 1990, Claimant was again examined by a doctor for an evaluation of back pain. The doctor noted tenderness due to back strain.

October 1, 1990, Claimant received an orthopedic consultation with Dr. Bowen. The examination revealed evidence of muscle spasm in the right parascapular area which was injected with lidocaine and aristospan.

Upon subsequent visits with Dr. Bowen on October 15, 1990, and November 12, 1990, Claimant reported a significantly improved condition.

A CT scan performed on November 23, 1990, failed to demonstrate evidence of fracture or dislocation. The doctor reported a normal cervical spine. An examination by Dr. Bowen on December 17, 1990, revealed no abnormalities. Claimant reported no complaints. The doctor declined Claimant's request for physical therapy in light of the fact there were no positive findings or complaints.

On June 11, 1992, Claimant began physical therapy citing the back injury on June 29, 1990. The physical therapy consultant advised exercises. Claimant returned for consultations on June 18, 1992, July 9, 1992, and July 16, 1992. On July 16, 1992, Claimant was discharged from physical therapy.

Claimant has repeatedly stated that he had not suffered any back pain or back injury prior to June 29, 1990. However, Claimant was, in fact, treated by the Inmate Health Service on February 7, 1988 for complaints of back pain.

Claimant seeks damages in the amount of $25,000 for pain and suffering and future complications or suffering as

a result of the Respondent's negligence. Claimant also seeks an unstated amount of back pay for the period of his lay-in.

I. Whether Respondent Is Liable to Claimant for Injuries Claimant Suffered While in the Course of Performing His Assigned Tasks

The law is clear, the State of Illinois owes a duty to inmates to provide them with safe conditions under which to perform their assigned work. To recover in a claim for personal injury against the State, Claimant bears the burden of proving, by a preponderance of the evidence, that the State breached its duty of care, and that the negligence of the State was the proximate cause of his injury. *Reddock v. State* (1978), 32 Ill. Ct. Cl. 611.

The Claimant testified that on June 29, 1990, he was working in his assigned capacity in the asbestos unit. At approximately 8:20 a.m. Claimant was standing on a ladder hanging plastic on the back end of the boiler. Pursuant to his supervisor's orders, Claimant descended the ladder. As he descended the ladder, he slipped on some oil on the ladder and fell backwards, striking his back on a steel beam.

Prior to the occurrence, Claimant had warned his supervisor of the dangerous condition of the presence of the oil on three occasions, yet Respondent failed to remove the oil and ordered Claimant to continue working. Respondent did not deny notice of the dangerous condition nor did Respondent produce any evidence to contradict Claimant's testimony.

Claimant has proved that Respondent failed to provide him with a safe environment in which to perform his assigned task. The breach of the Respondent's duty to Claimant was the direct proximate cause of Claimant's injury. Following the incident the doctors assessed Claimant's

injury as a contusion or bruise to the back area and ordered a lay-in for three days. The subsequent x-rays showed no evidence of fracture or dislocation.

Although Claimant produced evidence of subsequent visits to the doctor, Claimant failed to establish a causal connection between the incident of June 29, 1990, and subsequent treatment. Claimant also failed to establish that he had suffered any permanent injuries as a result of the occurrence of June 29, 1990.

Therefore, in assessing damages, the Court should only consider the injury proven as a direct result of the occurrence.

As to the issue of whether Claimant was contributorily negligent, the Court has recognized that an inmate does not enjoy the same independence as a person outside the penitentiary. To refuse the orders of a supervisor may subject the inmate to disciplinary action. *Davis v. State* (1987), 39 Ill. Ct. Cl. 185.

In this case, Claimant testified that he had warned his supervisor of the dangerous condition of the oil on the boiler on three occasions prior to the resulting injury. It is not unreasonable that Claimant continued to perform his assigned work in spite of the dangerous condition where failure to do so would have resulted in disciplinary action.

The evidence supports an award for Claimant's pain and suffering for back discomfort resulting from his fall for a period of three days. An award of $150 is entered in favor of Claimant.

II. Whether Claimant Is Entitled to Lay-in Pay

The Illinois Department of Corrections procedure manual states that inmates on "lay-in" are to be paid $2.50 per day. The manual further dictates that an "in-

mate receiving lay-in pay must not be under investigation or in segregation."

Claimant contends that he is entitled to lay-in pay for the term of the injury resulting from the Claimant's fall from a ladder on June 29, 1990.

Following Claimant's fall from the ladder on June 29, 1990, Dr. Ulrich examined Claimant and ordered a three-day lay-in. Claimant did not complain of back pain again until July 30, 1990. A doctor's examination of Claimant on July 31, 1990, revealed that Claimant had no restriction of movement and further lay-in was not ordered.

It is clear that if Claimant was entitled to lay-in pay it was only for the period of the actual lay-in, three days following the injury. Yet Claimant was, in fact, compensated for the entire month of July, 1990. Lay-in pay in the amount of $51.67 was posted to Claimant's trust account as compensation for July, 1990.

The Illinois Department of Corrections procedure manual dictates that lay-in pay should be denied when an inmate is under investigation. In this case, Claimant was, in fact, under investigation for his conduct while assigned to the asbestos crew. The investigation into Claimant's behavior and the decision to terminate Claimant were documented prior to Claimant's injury on June 29, 1990. In this factual situation, it was clearly within the discretion of the industry superintendent to deny Claimant's lay-in pay in its entirety.

Claimant was compensated for the entire month of July, 1990. There is no evidence to support the Claimant's contention that he is entitled to additional lay-in pay.

Claimant's request for award of lay-in pay is denied.